UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **RORY O. SCALES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action Number |
| | ) **1:18-cv-00136-AKK** |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Rory O. Scales brings this action pursuant to Section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the final decision adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that his decision, which has become the decision of the Commissioner, is supported by substantial evidence. Accordingly, the court **AFFIRMS** the decision denying benefits.

### I. Procedural History

Scales filed an application for disability insurance benefits on September 28, 2000, alleging disability due to back pain and major depression. *See* R. 91-92. The SSA found Scales to be disabled as defined by the Act beginning April 11,

2001, and the SSA awarded him benefits. R. 85, 89. In November 2012, the SSA conducted a continuing disability review, as required by statute, and scheduled consultative examinations for Scales. R. 358-59. Scales did not go to the examinations, and he did not submit to an interview with the SSA. R. 248-49, 252, 357-72. Accordingly, based on Scales' failure to cooperate and the insufficient evidence to show Scales' continued disability, the SSA determined that Scales was no longer disabled for purposes of the Act. R. 98, 101-02, 357-72. Scales requested reconsideration, but the SSA again found that Scales was not disabled because there was insufficient evidence to assess the severity of Scales' impairments. R. 105, 107, 120, 124. Subsequently, Scales requested a hearing before an ALJ, who found that Scales' disability ended as of November 1, 2012. R. 25, 126-27.[1] The SSA Appeals Council denied Scales' request for review, rendering the ALJ's decision the final decision of the Commissioner. R. 1. Having exhausted his administrative remedies, Scales filed this petition for review pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

---

[1] The ALJ continued Scales' first hearing to allow him to obtain representation and held a supplemental hearing at Scales' request. R. 14. Scales did not obtain representation and appeared pro se at his hearing and supplemental hearing. *Id.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not

presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

### III. Statutory and Regulatory Framework

42 U.S.C. § 423(f) governs the termination of disability benefits and provides in pertinent part that:

> A recipient of benefits . . . may be determined not to be entitled to such benefits on the basis of a finding that [his] . . . physical or mental impairment . . . has ceased, does not exist, or is not disabling only if such finding is supported by [] substantial evidence which demonstrates that—
>
> a. there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>
> b. the individual is now able to engage in substantial gainful activity . . . .

42 U.S.C. § 423(f)(1). The SSA uses an eight-step sequential analysis when determining whether to terminate disability benefits. *See* 20 C.F.R. § 404.1594(f). The SSA's review may cease at any step in the analysis if it determines there is sufficient evidence to find that a recipient of benefits is "still unable to engage in substantial gainful activity." *Id.*

The eight-step inquiry involves ascertaining whether the recipient of benefits has experienced a medical improvement in the severity of the impairments that were "present at the time of the most recent favorable medical decision that [the recipient was] disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), (f)(3). If there has been a medical improvement, then the SSA "must determine whether it is related to [the recipient's] ability to do work," and, if it is, whether the recipient's "current impairments in combination are severe . . . ." *Id.* at §§ 404.1594(f)(4)-(6). Next, the SSA determines the recipient's residual functional capacity ("RFC") and whether the recipient can perform work he has done in the past or can do other work in the national economy. *Id.* at §§ 404.1594(7)-(8). If the SSA finds that a recipient of benefits can perform past work or other work, then the recipient is found to be no longer disabled, and his benefits are terminated.

Relevant here, the SSA may also determine that a recipient of benefits is no longer disabled without a determination that he has "medically improved or can engage in substantial gainful activity" if the recipient does not cooperate with the SSA's continuing disability review. *Id.* at §§ 404.1594(e)(2), (f)(5). In particular, "[i]f there is a question about whether [a recipient of benefits] continue[s] to be disabled and [the SSA] ask[s] [him] . . . to go for a physical or mental examination by a certain date, [the SSA] will find that [his] disability has ended if [he] fail[s],

5

without good cause, to do what [the SSA] ask[s]." *Id*. at § 404.1594(e)(2). The SSA may consider the recipient's failure to cooperate at any point in the eight-step analysis. *Id.* at § 404.1594(f)(5).

### IV. The ALJ's Decision

Following the eight-step analysis, the ALJ first found that as of October 30, 2002 (the date of the most recent favorable medical decision, i.e., the "comparison point decision" or "CPD"), Scales had the following medically determinable impairments: mild to moderate stenosis at C6-7 and severe major depression without psychotic features. R. 16. These impairments resulted in moderately severe pain and an inability to relate to people and to respond appropriately to work pressure, rendering Scales unable to sustain basic work activity for an eight-hour workday or a 40-hour workweek. *Id*. Scales did not engage in substantial gainful activity from the date of the CPD through November 1, 2012, the date that Scales' disability ended. R. 17.

The ALJ found that Scales experienced medical improvement between the date of the CPD and November 1, 2012. R. 18. The ALJ determined that as of November 1, 2012, Scales had the following medically determinable impairments: "history of central disc protrusion at L5-S1 and broad-based disc bulge at L4-5; history of neural foraminal stenosis on the left at C6-7 and on the right at C3-4 due to minimal osteophyte formation; dizziness episode in December 2012; and

6

possible cerebrovascular accident/transient ischemic attack in February 2016." R. 17-18. The ALJ concluded that Scales' impairments, or combination of impairments, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526). *Id.* In light of Scales' medical improvement, the ALJ found that as of November 1, 2012, Scales had the RFC to perform unskilled medium work with the following limitations:

> [Scales] could only frequently reach overhead bilaterally. He should never be exposed to unprotected heights or operate commercial motor vehicles. In addition to normal breaks, he would be off task about five percent of an eight hour workday.

R. 19-20. Based on this Scales' RFC, age, education, and work experience, and the testimony of a vocational expert, the ALJ found that, as of November 1, 2012, Scales was able to perform a significant number of jobs in the national economy. R. 24-25. Accordingly, the ALJ determined that Scales' disability ended as of November 1, 2012. R. 25.

## V. Analysis

Scales takes issue with the Commissioner's finding that he is no longer disabled and asserts that the ALJ's decision is not based on substantial evidence and is contrary to the applicable regulations. Doc. 1 at 6.[2] In particular, Scales

---

[2] Scales, who is proceeding *pro se*, did not file a brief in support of disability or respond to the Commissioner's brief. Rather, he filed a motion for judgment on the pleadings, doc. 11, which the court denied as premature, doc. 14.

7

argues that there is no evidence to support the decision and that the ALJ mischaracterized the VE's testimony. *Id.* For the reasons explained below, the court rejects these contentions and affirms the ALJ's decision.

A. <u>Whether substantial evidence supports the ALJ's decision</u>

Scales first contends that no evidence supports the ALJ's determination that he is no longer disabled and that the ALJ improperly focused on irrelevant medical issues to reach his decision. Doc. 1 at 6. However, Scales does not identify any medical evidence the ALJ overlooked or failed to address. Moreover, the ALJ reviewed and thoroughly discussed the entire medical record, *see* R. 16-23, and the record supports the ALJ's finding that Scales is no longer disabled as of November 1, 2012.

As discussed by the ALJ, the record reflects that Scales did not seek treatment for cervical and lumbosacral disc disease or depression between October 30, 2002, the date of the CPD, and November 1, 2012. R. 18, 318-496. Likewise, there is no evidence that Scales has sought treatment for those conditions after November 1, 2012. R. 19, 318-496.

In addition, the medical records show improvement in Scales' cervical and lumbosacral disc disease and depression after October 30, 2002. Scales sought treatment on December 27, 2012 at Citizens Baptist Medical Center for dizziness. R. 393-99, 420-23, 434-47. A physical examination that day revealed normal

8

musculoskeletal range of motion, strength, and reflexes, and Scales was "[n]egative for back pain." R. 395-96. Scales also exhibited normal mood, affect, behavior, judgment, thought content, cognition, and memory. R. 396. An emergency room physician diagnosed Scales with vertigo based in part on a normal CT scan, and the hospital discharged Scales in good, stable, and improved condition. R. 393, 398.[3]

Scales returned to Citizens Baptist Medical Center on February 29, 2016 to seek treatment for tingling on the left side of his face, left arm, and left foot. R. 449. A physical examination revealed normal range of motion, and a normal mood and affect, and Scales' behavioral/psychiatric examination was negative. R. 451. In addition, Scales' neurological symptoms were diffuse and did not include headaches or aphasia. R. 449, 453. After a CT scan, Scales was diagnosed with a possible transient ischemic attack, or ischemic stroke, and discharged on March 2, 2016. R. 401-12, 453-89. The records do not indicate that Scales' physicians placed any limitations on his functioning upon his discharge, *see* R. 401-12, and there is no evidence that Scales returned for a follow-up visit after his discharge.

In addition to these medical records, in a December 2, 2011 continuing disability review report, Scales did not identify any mental conditions that limit his ability to work. R. 222. Rather, Scales only identified physical conditions relating

---

[3] Scales testified that he was misdiagnosed with vertigo and actually suffered a stroke in 2012, R. 51, but there is no objective medical evidence to support Scales' testimony.

to his lower back, mid back, and neck that limit his ability to work. *Id.* Scales reported that he had not received medical treatment in the previous 12 months for his back and neck conditions and that he took ibuprofen to ease the pain caused by those conditions. R. 222, 228. Consistent with that report, Scales' medical records from February 2016 indicate that he took ibuprofen as needed for "mild" neck and back pain. R. 460.

Based on the medical records and Scales' continuing disability review report, the court finds that substantial evidence supports the ALJ's finding that Scales experienced medical improvement between October 30, 2002 and November 1, 2012, and the ALJ's determination of Scales' RFC.

B. <u>Whether the ALJ mischaracterized the VE's testimony</u>

Scales contends also that the ALJ erred by misrepresenting the VE's testimony. Doc. 1 at 6. In his decision, the ALJ stated that he asked the VE "whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and [RFC] as of November 1, 2012." R. 24. But, at the hearing, the ALJ asked the VE whether an individual who could perform work in accordance with Scales' RFC could do any work in the national economy. R. 61. The ALJ did not explicitly ask the VE to consider Scales' age, education, or work experience. *Id.* Any error based on that omission is harmless, however, because the VE limited his response to unskilled work, which indicates the VE did

10

consider Scales' age, education, and work exerience. *See* R. 61-62. Specifically, the VE testified that an individual with Scales' RFC could perform unskilled medium work as a hand packager, industrial cleaner, or laborer in stores and that approximately 379,000 of those jobs exist nationally. *Id*. Thus, the VE's testimony shows that a significant number of jobs exist in the national economy exist that an individual with Scales' age, education, work history, and RFC could perform. Therefore, the record belies Scales' contention that the ALJ mischaracterized the VE's testimony.

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Scales is no longer disabled is supported by substantial evidence and that the ALJ applied the proper legal standards in reaching his determination. Therefore, the Commissioner's final decision is due to be affirmed. The court will enter a separate order in accordance with this Memorandum Opinion.

**DONE** the 9th day of January, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE